**UNIVERSAL AM–CAN, LTD, and National Union/AIAC, Petitioners,**

**v.**

**WORKERS' COMPENSATION APPEAL BOARD (MINTEER), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 5, 1997.

Decided Feb. 2, 1998.

Paul S. Mazeski, Pittsburgh, for petitioner.

---

Daniel K. Bricmont, Pittsburgh, for respondent.

Before COLINS, President Judge, and SMITH and FRIEDMAN, JJ.

FRIEDMAN, Judge.

Universal Am–Can, Ltd. (Employer) and National Union/AIAC, Employer's insurance carrier, appeal from an order of the Workers' Compensation Appeal Board (WCAB) affirming a Workers' Compensation Judge's (WCJ) decision to award Clarence O. Minteer (Claimant) workers' compensation benefits. We affirm.

On April 16, 1993, Claimant, a truck driver hired by Employer, fractured his right humerus, left wrist and left radius when he fell from his truck while attempting to secure a tarpaulin to cover a load. (WCJ's Findings of Fact, Nos. 1, 4.) Seeking benefits for this injury, Claimant filed a claim petition alleging that he was employed by Employer at the time of the injury. (WCJ's Findings of Fact, No. 1.) Employer filed a timely answer denying the material allegations of the claim, contending that Claimant was an independent contractor and, thus, not entitled to benefits. (WCJ's Findings of Fact, No. 2.)

A hearing was held before the WCJ and, on the issue of whether Claimant was an employee of Employer or an independent contractor,[1] the WCJ made the following findings of fact:

(1) [Claimant] was the owner of the tractor trailer unit which he was operating at the time of his injury.

(2) When he was injured, [Claimant] was hauling cargo for [Employer].

(3) [Claimant] and [Employer] entered into a Contractor Operating Agreement on February 5, 1993.... Through this Agreement, [Claimant] leased his tractor trailer unit to [Employer].

(4) By the Contractor Operating Agreement[, Employer] took exclusive control of [Claimant's] tractor-trailer unit.

(5) [Claimant] was required to place [Employer's] identification insignia on his truck.

(6) Although [Claimant] had a right to haul cargo for others, this right was severely restricted by the terms of the [Contractor Operating Agreement]. He could exercise this right only if [Employer] had no cargo to haul and only with the permission of [Employer].

(7) Claimant was required to contact [Employer's] dispatcher by telephone every 12 or 24 hours, depending on the load....

(8) Although [Claimant] was responsible for maintenance and fueling of his tractor-trailer unit, [Employer's] driver regulations include requirements for mandatory inspections, for observing speed limits, and for covering loads with tarps.

(9) [Employer's] driver's manual includes a provision which relieves the driver of all duty and responsibility as to the vehicle and cargo when "off duty" while making the mandatory one hour stop for meals. This provision implies control by [Employer] during on duty work hours.

(10) Although Section 7A of the Contractor Operating Agreement apparently makes [Claimant] fully responsible for hiring, firing and directing drivers of his tractor-trailer, this responsibility is essentially controlled by...Employer by the Agreement section 7F which requires [Employer's] approval of all drivers and by the numerous regulations and requirements contained in its driver's manual.

(11) [Claimant] chose his travel routes without direction from [Employer].

(WCJ's Findings of Fact, No. 8.)

Based on the findings, the WCJ determined that Claimant was an employee, not an

---

1. At the hearing, with respect to the issue of Claimant's injury, Claimant presented the deposition testimony of Charles R. Snyder, M.D., the physician treating Claimant immediately after Claimant suffered the injuries, and Michael David Miller, M.D., both certified by the American Board of Orthopedic Surgery. From the medical testimony provided, the WCJ found that, although Claimant essentially recovered from the fracture to the right humerus, the injury to the left wrist and radius prevented Claimant from loading and unloading cargo and from readily climbing into and out of the truck and cargo area. (WCJ's Findings of Fact, Nos. 5, 7.) Employer did not offer any medical testimony in opposition to Claimant's medical testimony. (WCJ's Findings of Fact, No. 6.)

independent contractor. Specifically, the WCJ found:

> [Claimant's] work was controlled to a large degree by [Employer]. It controlled the essential elements of his work through the Contractor Operating Agreement and its driver's manual. This control of [Claimant's] work makes him an Employee of [Employer]; he was its Employee at the time of his injury.
>
> [Claimant's] rights to refuse an assignment and to choose his travel routes, and his obligations to maintain and fuel his tractor-trailer, were not sufficient to make him independent of control by [Employer].

(WCJ's Findings of Fact, No. 9.) The WCJ determined that Claimant had suffered a compensable work-related injury and, accordingly, awarded him benefits. Employer appealed to the WCAB, which affirmed the decision of the WCJ.

On appeal to this court,[2] Employer argues that the WCJ erred in finding that Claimant, at the time of his injury, was an employee of Employer and not an independent contractor. If Claimant is an independent contractor, as asserted by Employer, then Claimant is not an employee[3] for workers' compensation purposes and is not entitled to an award of benefits. *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier)*, 158 Pa.Cmwlth. 76, 631 A.2d 693 (1993), *appeal denied*, 537 Pa. 613, 641 A.2d 313 (1994). In order to qualify for benefits as an employee, a claimant has the burden of establishing that an employer-employee relationship existed at the time of the injury. *Id.* We believe that Claimant met his burden here.

Our courts have set forth key factors to be considered in determining whether a claimant is an independent contractor or an employee. Those elements include the right of the alleged employer to: (1) hire and fire the employee, (2) direct the manner of the employee's performance, and (3) control the work to be completed. *Cox v. Caeti*, 444 Pa. 143, 279 A.2d 756 (1971); *Sunset Golf Course v. Workmen's Compensation Appeal Board (Dep't of Public Welfare)*, 141 Pa.Cmwlth. 103, 595 A.2d 213 (1991), *appeal denied*, 529 Pa. 654, 602 A.2d 863 (1992). While all of the factors are important, the most persuasive indicator of a claimant's employee or independent contractor status lies in the *right* to control either the work to be done or the manner in which the work is to be accomplished. *Lynch v. Workmen's Compensation Appeal Board (Connellsville Area School District)*, 123 Pa.Cmwlth. 299, 554 A.2d 159 (1989), *appeal denied*, 525 Pa. 629, 578 A.2d 416 (1990). If an alleged employer possesses this right, then an employer-employee relationship likely exists. *Compare Johnson* (analyzing key indicia in holding that an individual was an employee) *with Lynch* (finding an individual was an independent contractor based on the indicia). Here, Employer not only had the right to control or supervise the manner and method by which Claimant hauled cargo and completed the deliveries, but also the statutory duty to do so.

Employer leased vehicles for use in its hauling business while operating under both Interstate Commerce Commission (ICC) and Pennsylvania Department of Transportation (DOT) permits.[4] Pursuant to federal regula-

---

2. Our scope of review in workers' compensation decisions is limited to determining whether an error of law was committed, whether constitutional right were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Berks County Home v. Workmen's Compensation Appeal Board (Schnable)*, 145 Pa.Cmwlth. 582, 604 A.2d 767 (1992). Whether a claimant is an independent contractor or an employee is a question of law fully reviewable by this court. *Johnson v. Workmen's Compensation Appeal Board (Dubois Courier)*, 158 Pa. Cmwlth. 76, 631 A.2d 693 (1993), *appeal denied*, 537 Pa. 613, 641 A.2d 313 (1994).

3. Pursuant to section 104 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 22, an employee is defined as a "person[] who perform[s] services for another for a valuable consideration, exclusive of [those] whose employment is casual in character and not in the regular course of the business of the employer...."

4. 49 C.F.R. § 376.11 requires that when a carrier does not own its equipment, it may only transport cargo under an ICC permit after the execution of a written lease which grants use of the equipment and transfers responsibility to the carrier lessee.

tions, a motor carrier operating pursuant to an ICC permit is required to maintain control of, and be responsible for, the operation of its leased vehicles. To facilitate this control, federal regulations require that:

[t]he lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 376.12(c)(1).[5] Additionally, 49 C.F.R. § 376.11(c) requires identification of the leased vehicle in the carrier's service by displaying the name of the carrier and the ICC permit number on the vehicle. Moreover, prior to the issuance of an ICC permit, a motor carrier must provide evidence of financial responsibility sufficient to satisfy any judgments against the carrier for injuries that may occur during transportation. 49 C.F.R. § 387.301(a). Similar to the federal regulation grant of control to a motor carrier lessee operating under an ICC permit, Pennsylvania law confers the same power, control and responsibility upon a carrier lessee operating equipment under a DOT permit.[6]

To comply with Pennsylvania and federal law, Claimant and Employer were required to enter into the Contractor Operating Agreement in order for Claimant to operate under Employer's ICC and DOT permits. By virtue of this agreement, Claimant relinquished his status as an independent contrac-

tor and became an employee of Employer.[7] Accordingly, the WCAB did not err in concluding that Claimant was an employee of Employer and not an independent contractor, and we affirm its order.

## ORDER

AND NOW, this 2nd day of February, 1998, the order of the Workers' Compensation Appeal Board, No. A95–4511, dated June 27, 1997, is hereby affirmed.

---

5. We note that in *Mellon National Bank & Trust Company v. Sophie Lines, Inc.*, 289 F.2d 473 (3rd Cir.1961), the Third Circuit Court of Appeals interpreted the federal regulations to create an employment relationship between a carrier lessee and a driver until execution of a receipt, if required by the lease, showing that the carrier relinquished possession of the leased equipment. Here, clause 14 of the Contractor Operating Agreement required such a receipt, (R.R. at 327a), and until executed, Employer retained possession of Claimant's tractor-trailer.

6. 52 Pa.Code § 31.32(c)(2)(iv)(A) provides that "[a] lease shall provide for and be carried out so that the possession, control and use of the equipment is the complete and exclusive responsibility of the lessee for the full term of the lease...." Additionally, 52 Pa.Code § 31.33 requires, on

each side of the exterior of the leased motor vehicle, the display of the name and address of the carrier lessee along with the issued DOT permit number.

7. Indeed, Claimant's display of Employer's insignia and ICC and DOT permits on the outside of his truck established an "irrebuttable presumption" of an employment relationship between Employer and Claimant. The Third Circuit Court of Appeals, referring to *Mellon National Bank & Trust*, stated in *Carolina Casualty Insurance Company v. Insurance Company of North America*, 595 F.2d 128, 137 n. 29 (3rd Cir.1979), that "federal law in effect creates an irrebuttable presumption of an employment relationship between a driver and the lessee whose placards identify the vehicle."